UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT DEREK LURCH, JR.,
Plaintiff,

-against-

THE CITY OF NEW YORK, OFFICER GLENROY DUNDAS, and OFFICER NICHOLAS DUNN,
Defendants.

Case No. 1:25-cv-07416 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

*Pro se* Plaintiff Robert Derek Lurch, Jr. ("Plaintiff"), brings this action pursuant to 42 U.S.C. § 1983 against the City of New York (the "City") and New York Police Department ("NYPD") officers Glenroy Dundas ("Officer Dundas") and Nicholas Dunn ("Officer Dunn"; together with Officer Dundas, the "Officer Defendants"; and, together with Officer Dundas and the City, "Defendants"), asserting a claim for false arrest in violation of his Fourth Amendment rights. Defendants move to dismiss the claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), for failure to state a claim upon which relief can be granted. For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I. Factual Background

The following facts are drawn from Plaintiff's complaint, *see* Dkt. 1 ("Compl." or the "Complaint"), and documents attached to it as exhibits, *see DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). These facts are accepted as true for purposes of this motion. *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020).

On May 6, 2025, Plaintiff and his girlfriend "got into a disagreement" in public. Compl. at 5. The couple was staying in a hotel at the time, and their argument, which concerned what to feed Plaintiff's girlfriend's son for breakfast, appears to have commenced inside their hotel room. *Id.* While they were "disagreeing loudly," Plaintiff's girlfriend "insisted on going to" a 7-Eleven store. *Id.* Accordingly, the couple left the hotel room and "reached the lobby area of the hotel." *Id.* There, "hotel management told . . . [P]laintiff that he shouldn't talk so loudly to his girlfriend." *Id.* Plaintiff represents that he "minimized the situation by truthfully telling hotel staff that his girlfriend is a little stubborn that[']s all," and that everything was "ok." *Id.* Plaintiff, his girlfriend, and her son then went to the 7-Eleven, where, it appears, the argument between Plaintiff and his girlfriend continued. *Id.* Indeed, as they entered the store, Plaintiff was "aggressively approached" by an unidentified individual "as [P]laintiff was speaking to his girlfriend," and Plaintiff "informed this individual that he is a grown man and that this individual should mind his business in regards to anything . . . [P]laintiff has going on with him and his significant other." *Id.* "At that moment," according to Plaintiff, certain police "[o]fficers approached [him] and said he was being edp'd," *id.* — that is, seized and taken to a hospital for psychiatric evaluation pursuant to New York Mental Hygiene Law § 9.41, *id.* at 6. When Plaintiff asked why he was being arrested, the officers responded that they "didn't like" what Plaintiff had said to the unidentified individual. *Id*. at 5.

Although Plaintiff does not clearly allege that these officers took him to the hospital after detaining him, he has attached various records documenting his May 6, 2025 hospital intake and discharge. According to one of them, a Prehospital Care Report Summary, emergency medical services ("EMS") were initially dispatched to the scene of Plaintiff's arrest "for DRUG - DRUG - Hx Drug Or Alcohol Abuse" and, once they arrived, encountered Plaintiff "standing in [the] hotel lobby." *Id.* at 17. The document further notes that, "per NYPD, [Plaintiff] is EDP and

ETOH intox." *Id.* Plaintiff alleges, however, that he was not "drunk or under the influence at all." *Id.* at 9. The Prehospital Care Report Summary further states that, "[u]pon arrival" at the hospital, Plaintiff was "screaming at NYPD officers and [EMS]" and "exhibit[ing] violent behavior to[ward] NYPD and [EMS]," and that hospital staff was "unable to . . . obtain[]" Plaintiff's "[v]ital signs" due to this behavior. *Id.* at 17. Plaintiff appears to concede that he was "acting aggressive with officers" at this point, but he maintains that this behavior did not justify the initial arrest. *Id.* at 9.

Another document lists a doctor's "[c]linical [i]mpressions" of Plaintiff as "agitation," "cocaine use," and "alcohol use." *Id.* at 22 (capitalization omitted). Plaintiff alleges that there are "no test results or lab results" proving that he used cocaine or drank alcohol that day, and that he did not "notify anyone he spoke [to] on the day of the incident that he was under the influence of any substance." *Id.* at 21. Finally, Plaintiff attaches notes from a triage nurse and a physician. The triage nurse wrote that "per ems/nypd," Plaintiff had been found "in [a] 7/11 store shirtless and shoeless and throwing items around in store and then was in his hotel lobby also throwing stuff there too." *Id.* at 26. Once at the hospital, the triage nurse's notes continue, Plaintiff was "screaming and cursing about being arrested in front of his child," and was "[u]ncooperative and not redirectable." *Id.* The physician's notes similarly recount EMS's or NYPD's reports of initially encountering Plaintiff. *See id.* ("Patient was found intoxicated, shirtless, without shoes in convenience store."). But Plaintiff alleges that this version of his arrest is false: EMS or NYPD "falsely informed" the hospital that Plaintiff had been found "shirtless and throwing stuff around 7/11 and the hotel lobby," when in fact "[t]his event never occurred, [P]laintiff was told he was being brought in because police observed him exchange words with another 7/11 customer and they don[']t believe [he is] mentally stable." *Id.* at 25; *see also id.* at 9 (alleging that "any surveillance footage from 7/11 or the hotel on the day of the incident will show this

event did not occur and was fabricated"). The physician further noted that Plaintiff had "[e]ndorse[d] drinking alcohol but denie[d] any drug use or trauma." *Id.* at 26. But, as mentioned above, Plaintiff denies "notify[ing] anyone he spoke [to]" that day "that he was under the influence of any substance." *Id.* at 21.

It appears that Plaintiff was discharged from the hospital the same day as his initial arrest, May 6, 2025. *See id.* at 22. The Complaint does not include any allegations concerning what, if anything, followed this discharge.

## II. Procedural History

Plaintiff commenced this action *pro se* on September 5, 2025, against the Officer Defendants (who were, at that time, unnamed, but one of whom was identified by a badge number, and the other of whom was identified as that officer's "partner") and the City. *Id.* at 3. He brings a single claim under 42 U.S.C. § 1983, alleging that Defendants violated his Fourth Amendment rights because the Officer Defendants seized him under New York Mental Hygiene Law § 9.41 or § 22.09 without probable cause. *Id.* at 5-10.

On October 3, 2025, the Court issued an order pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), directing the City to identify the unnamed officer defendants and directing Plaintiff to amend his Complaint, within thirty days of Defendants' compliance, to include the officers' names. *See* Dkt. 7. The City provided the required information on December 2, 2025. *See* Dkt. 11. On January 8, 2026, Plaintiff wrote to the Court and, citing certain hardships he was then experiencing, asked that the Court construe the Complaint as amended to include the names of the officers. *See* Dkt. 15. The Court granted that request on January 13, 2026. *See* Dkt. 16.

On January 29, 2026, Defendants moved to dismiss the Complaint. *See* Dkt. 17; Dkt. 18 ("Br."). On February 11, 2026, Plaintiff filed a memorandum of law in opposition to

Defendants' motion. *See* Dkt. 20 ("Opp."). Defendants filed their reply on March 30, 2026. *See* Dkt. 21 ("Reply"). The motion was fully briefed as of that date. Nevertheless, and without seeking prior leave of the Court, Plaintiff filed a "supplemental" opposition on April 28, 2026. *See* Dkt. 23 ("Sur-Reply"). Defendants ask the Court to strike that filing, but they note that it "offers no new, supported factual allegations that would warrant [its] consideration." Dkt. 24 at 2. Given Plaintiff's *pro se* status, the Court will consider his Sur-Reply.

## LEGAL STANDARDS

### I. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). The Court accepts as true all non-conclusory allegations of fact and "draw[s] all reasonable inferences in the [nonmovant]'s favor." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc) (quoting *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016)). But the Court need not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[T]he court's task is to assess the legal feasibility of the [allegations]; it is not to assess the weight of the evidence that might be offered on either side[.]" *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). Where, as here, the plaintiff is *pro se*, the Court construes the pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interprets them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (emphasis and citation omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party 'from compliance with relevant rules of procedural and substantive law,'" *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quoting *Maisonet v. Metro.*

*Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 347 (S.D.N.Y. 2009)), and "even *pro se* pleadings 'must state a plausible claim for relief' beyond 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Parkes v. Latch, Inc.*, 810 F. Supp. 3d 405, 412 (S.D.N.Y. 2025) (quoting *Caraballo v. Dep't of Corr. City of New York*, No. 22-cv-00971 (JLR), 2022 WL 16555313, at *2 (S.D.N.Y. Oct. 31, 2022)).

## II. Section 1983

Under Section 1983, any person "who, under color of any statute . . . subjects . . . any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. To state a valid claim under Section 1983, a plaintiff must plausibly allege that the defendant (1) "deprived [him] of rights, privileges, or immunities secured by the Constitution or laws of the United States," and (2) was "acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *accord Shepler v. Collura*, No. 17-cv-10254 (ER), 2020 WL 729763, at *4 (S.D.N.Y. Feb. 13, 2020). For Section 1983 claims sounding in false arrest, courts "look to the law of the state in which the arrest occurred," and, in New York, the law requires that a plaintiff "show that: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022) (quoting *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003)).

# DISCUSSION

Defendants seek to dismiss the Complaint for four reasons: (1) it fails to sufficiently plead the personal, direct involvement of the Officer Defendants in the alleged constitutional violation, *see* Br. at 6-7; (2) the Officer Defendants had probable cause to arrest Plaintiff, *see id.* at 7-13; (3) the Officer Defendants are entitled to qualified immunity, *see id.* at 13-15; and

(4) Plaintiff fails to establish a sufficient claim for municipal liability against the City, *see id.* at 16-17. Defendants also ask the Court to enter an injunction requiring Plaintiff to obtain judicial permission before filing any future lawsuit. *See id.* at 17-20. The Court addresses these arguments in turn.

## I. Personal Involvement

Defendants first argue that the Complaint should be dismissed because Plaintiff has failed to plead "any specific facts linking" the Officer Defendants "to the alleged conduct," such as an "explanation of each officers' role in the incident." Br. at 6. Plaintiff does not respond to this argument in his opposition or sur-reply, but the Court disagrees with Defendants.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). A defendant may be personally involved in a constitutional violation by directly or indirectly participating in it; "'direct participation' as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (footnote omitted). A defendant indirectly participates when he, "with knowledge of the illegality, participates in bringing about a violation of the victim's rights" by, for example, "ordering or helping others to do the unlawful acts, rather than doing them [him]self." *Id.*; *accord Leneau v. Ponte*, No. 16-cv-00776 (GHW), 2018 WL 566456, at *14 (S.D.N.Y. Jan. 25, 2018). At bottom, "a plaintiff must plead . . . 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). In the context of "a claim for false arrest, 'each individual sued needs to have had personal involvement in the arrest in order

to be held liable under 42 U.S.C. § 1983.'" *Minott v. Duffy*, No. 11-cv-01217 (KPF), 2014 WL 13866583, at *11 (S.D.N.Y. Apr. 8, 2014) (quoting *Travis v. Vill. of Dobbs Ferry*, 355 F. Supp. 2d 740, 747 (S.D.N.Y. 2005)); *accord Hollenquest v. City of New York*, No. 21-cv-08801 (LTS), 2025 WL 1827644, at *4 (S.D.N.Y. July 2, 2025).

Here, Plaintiff alleges that "[o]fficers approached" him at the 7-Eleven and "said that he was being edp'd," because "they didn't like" what Plaintiff had said to the unknown individual. Compl. at 5. He further alleges "an officer with the badge number 9976 escorted [him] to the hospital," *id.* at 14, and that the same officer (Officer Dundas, *see id.* at 22) "was present when [he] was discharged," *id.* at 21. These allegations are enough — at this stage, and liberally construing the Complaint to raise the strongest possible claim — to establish the Officer Defendants' personal involvement in Plaintiff's arrest. *See, e.g.*, *Atkinson v. City of Newburgh*, No. 24-cv-06724 (NSR), 2026 WL 1865119, at *4 (S.D.N.Y. June 29, 2026) ("While the [complaint] does not delineate the specific actions undertaken by each officer during the arrest, [p]laintiff's allegation that all three officers participated in handcuffing and arresting him permits the reasonable inference that each was personally involved in the challenged conduct."); *Bowers v. City of Salamanca*, No. 20-cv-01206, 2021 WL 2917672, at *9 (W.D.N.Y. July 12, 2021) ("The amended complaint alleges that both [police officer defendants] arrested [plaintiff]. That is enough to allege each officer's personal involvement."). Therefore, Defendants' motion to dismiss for failure to adequately plead personal involvement is denied.

## II. Probable Cause

Defendants next argue that the Complaint should be dismissed because the Officer Defendants had probable cause to arrest Plaintiff, either for mental health purposes or for disorderly conduct. *See* Br. at 7-13. Plaintiff contends that he has plausibly alleged otherwise,

Opp. at 3-4, and that Defendants' contrary arguments rely on "factual disputes that cannot be resolved on a motion to dismiss," *id.* at 4. The Court agrees with Plaintiff.

As discussed, a plaintiff alleging false arrest must plead that his confinement was "not otherwise privileged," and "[a]n arrest is privileged if it is based on probable cause, for probable cause is a complete defense to a false arrest claim." *Guan*, 37 F.4th at 804. "Officers have probable cause when they have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019). "A false arrest claim can be dismissed based on probable cause only if it is evident from the facts alleged in the complaint that the officers had probable cause." *Moore v. City of New York*, No. 22-cv-10957 (LGS), 2024 WL 3361193, at *4 (S.D.N.Y. July 10, 2024).

Here, Plaintiff alleges that he was arrested without probable cause because the Officer Defendants did not comply with Section 9.41 or 22.09 of the New York Mental Hygiene Law. Compl. at 5-6. Under New York Mental Hygiene Law § 9.41, New York police officers may "take into custody any person who appears to be mentally ill and is conducting themself in a manner which is likely to result in serious harm to the person or others." N.Y. Mental Hyg. Law § 9.41(a) ("§ 9.41"). Under New York Mental Hygiene Law § 22.09, officers may take a person "to a treatment facility for purposes of receiving emergency services" when that person "appears to be incapacitated by alcohol and/or substances to the degree that there is a likelihood to result in harm to the person or to others." N.Y. Mental Hyg. Law § 22.09(b)(2) ("§ 22.09"). Defendants do not appear to dispute that Plaintiff's arrest must be justified under one or both of these statutes. *See* Br. at 9-12 (arguing that Officer Defendants had probable cause for § 9.41 arrest and asserting that Plaintiff was intoxicated). For arrests made in these contexts, "a

showing of probable cause . . . requires only a probability or substantial chan[c]e of dangerous behavior, not an actual showing of such behavior." *Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 622 (S.D.N.Y. 2015) (quoting *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997)), *aff'd*, 665 F. App'x 49 (2d Cir. 2016) (summary order). "The question thus becomes whether the facts and circumstances known to the officers at the time they seized [the p]laintiff were sufficient to warrant a person of reasonable caution to believe that []he might be mentally ill and conducting [him]self in a manner likely to result in serious harm to [him]self or others." *Xiao Qing Liu v. N.Y. State Dep't of Health*, No. 16-cv-04046 (ER), 2017 WL 3393944, at *5 (S.D.N.Y. Aug. 4, 2017).

Plaintiff alleges that the Officer Defendants arrested him merely because they "didn't like" what he had said to another 7-Eleven customer. Compl. at 5. He further alleges that he was not "drunk or under the influence at all" that day, that he was not throwing things, and that any contentions otherwise are "fabricated." *Id.* at 9. Even within the broader context of the arrest — that is, that Plaintiff had been arguing with his girlfriend so loudly as to prompt both hotel management and the 7-Eleven customer to intervene, *see id.* at 5 — there are no pleaded facts here that establish a probability or substantial chance of dangerous behavior, and therefore nothing on the face of the Complaint establishes probable cause for an arrest under § 9.41 or § 22.09. *See, e.g.*, *Jones v. New York*, No. 16-cv-00556 (AJN), 2019 WL 4640151, at *5 (S.D.N.Y. Sept. 24, 2019) (explaining that, for purposes of § 9.41, "a person may be annoyed, uncooperative, and irrational without presenting a danger to herself or of violence to others" (alteration adopted) (quoting *Myers v. Patterson*, 819 F.3d 625, 634 (2d Cir. 2016))); *see also* *Bennett v. N.Y. Police Dep't*, No. 12-cv-01345 (KBF), 2013 WL 840611, at *2 (S.D.N.Y. Mar. 1, 2013) ("[I]f it is clear from plaintiff[']s allegations that defendants had probable cause to . . . arrest him . . ., then plaintiff[']s claims must fail as a matter of law. On a motion to

dismiss, however, the [c]ourt may not weigh evidence or make findings as to the presence or absence of probable cause. The sole question is the sufficiency of the allegations.").

Defendants argue that Plaintiff was, in fact, "acting irate and aggressive in a public business," that he "refused to comply with officers' attempts to de-escalate," that he "was shirtless and shoeless," and that he "appeared intoxicated," and that all these facts established probable cause for his arrest. Br. at 10. On a motion to dismiss, the Court cannot credit Defendants' counter-allegations, because they are outside the scope of the Complaint and rely instead on the truth of hospital employees' statements in the records Plaintiff has attached to the Complaint. But that reliance is improper at this stage, because Plaintiff attached these documents specifically to dispute the veracity of those statements. *See, e.g.*, Compl. at 21 ("This document falsely states that the plaintiff was under the influence of cocaine and alcohol[.]"); *id.* at 25 (Plaintiff contesting the documentation that he was "shirtless and throwing stuff around" because "[t]his event never occurred"). And "in cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Pearson v. Gesner*, 125 F.4th 400, 407 (2d Cir. 2025) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016)); *see id.* at 407-09 (vacating dismissal of plaintiff's excessive force claims because district court relied on description of events written in a misbehavior report that differed from plaintiff's allegations even though the report was attached to the complaint); *see also Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674 (2d Cir. 1995) (explaining that "[a]n appended document will be read to evidence what it incontestably shows once one assumes that it is what the complaint says it is," but, for example, "a libel plaintiff may attach the writing alleged in the complaint to be libelous without risk that the court will deem true all libels in it").

Relying on the same statements in the attached documents, Defendants also suggest that the Officer Defendants had probable cause to arrest Plaintiff for disorderly conduct. Again, reliance on the truth of disputed statements in documents attached to the Complaint to support that argument is not proper on a motion to dismiss. In any event, even if there had been probable cause to arrest Plaintiff for the crime of disorderly conduct, such an arrest would not permit transportation to a hospital for mental health purposes, which is what Plaintiff alleges occurred here. As the Second Circuit has explained, "[f]or a law enforcement arrest, police officers have probable cause to arrest when they reasonably believe that 'the person to be arrested has committed or is committing a crime.' On the other hand, for a mental health arrest, police officers must have 'reasonable grounds for believing that the person seized is dangerous to herself or others.'" *Guan*, 37 F.4th at 805 (citations omitted) (first quoting *Hernandez*, 939 F.3d at 199; and then quoting *Anthony v. City of New York*, 339 F.3d 129, 137 (2d Cir. 2003)). The two types of arrest are "different in nature," and therefore "[p]robable cause to arrest for a criminal violation . . . is not a sufficient basis to arrest an individual for an emergency mental health evaluation." *Id.* Assuming all facts alleged by Plaintiff to be true, and accepting for purposes of this motion his allegations that the documentation regarding the incident is false, Defendants have not shown that the Complaint alleges dangerous behavior sufficient to support probable cause.

For these reasons, the Court cannot find, at this stage of the litigation, that the Officer Defendants had probable cause to effectuate a mental health arrest of Plaintiff, and the Court denies Defendants' motion to dismiss on this basis.

## III. Qualified Immunity

Defendants next contend that the Officer Defendants are entitled to qualified immunity. Br. at 13-15. At this stage, the Court cannot agree.

"Qualified immunity shields law enforcement officers from § 1983 claims for money damages provided that their conduct does not violate clearly established constitutional rights of which a reasonable person would have been aware." *Zalaski v. City of Hartford*, 723 F.3d 382, 388 (2d Cir. 2013). Determining whether an officer is entitled to immunity requires a two-step inquiry: "First . . . whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted). At the second step, "the focus is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted,'" and therefore courts "ask whether 'it was objectively reasonable for the officer to believe' that he acted lawfully, based on clearly established law and the information he possessed." *Matusak v. Daminski*, 165 F.4th 702, 711 (2d Cir. 2026) (alteration adopted) (first quoting *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020); and then quoting *Jones*, 963 F.3d at 225). This objective reasonableness turns on whether "there was 'arguable' probable cause at the time of arrest — that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (quoting *Lennon v. Miller*, 66 F.3d 416, 423-24 (2d Cir. 1995)); *see also Soukaneh v. Andrzejewski*, 112 F.4th 107, 122-23 (2d Cir. 2024) ("Arguable probable cause 'exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law.'" (quoting *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997))).

Defendants argue that the Officer Defendants acted objectively reasonably under this standard, but again they point not to Plaintiff's pleaded allegations, but rather to purported facts Defendants pull from statements in the documents Plaintiff has attached to the Complaint and

disputed. *See, e.g.*, Br. at 15 (arguing that no binding precedent prohibited the Officer Defendants from making a disorderly conduct arrest of someone "acting erratic, barefoot and shirtless, while also under the influence in a commercial establishment"); Reply at 6 (discounting Plaintiff's allegation "that he was seized merely because the Officer[] [Defendants] allegedly did not like the tone of his voice," and arguing instead that he was "seized due to agitation, suspected substance abuse, and violent behavior" (quotation marks and citation omitted)); *id.* at 7 (arguing that statements contained in documents Plaintiff attached "provide[] unambiguous evidence of Plaintiff's violent behavior"). Plaintiff alleges that he was not intoxicated or throwing things, *see, e.g.*, Compl. at 9, 21, 25, but rather that he was "disagreeing loudly" with his girlfriend, that a stranger intervened, and that Plaintiff told the stranger that "he is a grown man and that this individual should mind his business in regards to anything the [P]laintiff has going on with him and his significant other," Compl. at 5. The officers then told him that he was being edp'd because "they didn't like what [he] informed the stranger." *Id.* Just as these pleaded allegations do not support probable cause for his arrest under § 9.41 or § 22.09, they do not support arguable probable cause; as Plaintiff points out, "no reasonable officer could believe that disliking someone's tone of voice, absent dangerous conduct, justified a psychiatric seizure." Opp. at 5; *cf. Jones*, 2019 WL 4640151, at *5 ("[A] person may be annoyed, uncooperative, and irrational without presenting a danger to herself or of violence to others." (alteration adopted) (citation omitted)). The Court must accept as true, at this stage, that this was the reason the Officer Defendants arrested Plaintiff. *See Francis*, 992 F.3d at 72.

To be sure, the Court's analysis of arguable probable cause — and perhaps even probable cause — would be different if the statements in the hospital records Plaintiff attaches were the pleaded facts before the Court. But, for the reasons discussed above, they are not, and

Defendants' arguments beyond the pleadings are improper at the motion-to-dismiss stage. Therefore, Defendants' motion to dismiss on qualified immunity grounds is denied.

**IV. The City's Municipal Liability**

Defendants also move to dismiss the Complaint as against the City because, they argue, Plaintiff has failed to allege facts sufficient to establish municipal liability under *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 (1978). *See* Br. at 16-17. Plaintiff does not address this issue in his opposition or sur-reply. Here, the Court agrees with Defendants.

To state a Section 1983 claim against a municipality — that is, a *Monell* claim — a plaintiff must plausibly allege "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *accord Elliott v. City of New York*, 723 F. Supp. 3d 249, 265 (S.D.N.Y. 2024). A plaintiff satisfies the fifth *Monell* prong by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Rutherford v. City of Mount Vernon*, 698 F. Supp. 3d 574, 610 (S.D.N.Y. 2023) (quoting *Buari v. City of New York*, 530 F. Supp. 3d 356, 397-98 (S.D.N.Y. 2021)).

Plaintiff does not allege the existence of any policy that the City has endorsed, any actions taken by City policymakers, any consistent or widespread practice, or any failure to train. Even liberally construed and with every inference drawn in Plaintiff's favor, the Complaint includes no allegation — even a conclusory one — of any City policy at all, let alone how the

Officer Defendants' actions reflect conformity with that practice or a lack of training amounting to the City's deliberate indifference to Plaintiff's or others' rights. Indeed, Plaintiff does not mention the City anywhere in the Complaint, aside from naming it as a defendant, *see* Compl. at 3, and noting that he seeks "$5 million dollars in punitive damages" from it, *id.* at 11. For this reason alone, Plaintiff's pleadings are insufficient to state a Section 1983 claim against the City. *See, e.g.*, *Culbreth v. Manuel*, No. 24-cv-00497 (PMH), 2025 WL 35059, at *7 (S.D.N.Y. Jan. 6, 2025) ("Plaintiff has not alleged any municipal custom or policy that was violated here[,] and that failure is . . . fatal to a *Monell* claim."); *Stewart v. Cnty. of Nassau*, No. 12-cv-00320 (LDW), 2014 WL 204615, at *4 (E.D.N.Y. Jan. 17, 2014) (dismissing *Monell* claim where "plaintiff's [c]omplaint simply set[] forth a particular, isolated instance of alleged misconduct by low-ranking police officers," and thus "failed to identify, let alone establish, any municipal policy" (alteration adopted) (quotation marks and citation omitted)); *cf. Adams v. Town of Clarkstown Police Dep't*, No. 21-cv-11062 (CS), 2023 WL 1109647, at *11 (S.D.N.Y. Jan. 30, 2023) (dismissing *Monell* claim where plaintiff "merely states that the Town failed to properly train, screen, supervise, and discipline officers, which led them to arrest [p]laintiff without probable cause"). Therefore, Plaintiff's claim against the City must be dismissed.

## V. The Injunction Request

Finally, pointing to Plaintiff's "extensive history of litigation," Br. at 18, Defendants ask that this Court enjoin Plaintiff from filing any future lawsuit without first obtaining leave of the Court. *See* Br. at 17-20. The Court declines the request at this time given that it is only partially granting Defendants' motion to dismiss, but Defendants may renew their request at a later stage if appropriate.

## CONCLUSION

For all the foregoing reasons, Defendants' motion to dismiss is GRANTED to the extent that the City of New York is dismissed as a defendant, and it is otherwise DENIED. The Clerk of Court is respectfully directed to close the motion at Dkt. 17 and to update the docket to remove the City of New York as a defendant in this action. The Officer Defendants shall file an answer in response to the Complaint by **September 9, 2026**.

Dated: August 26, 2026
New York, New York

SO ORDERED.

Jennifer Rochon

JENNIFER L. ROCHON
United States District Judge